## GAMALIEL G. SMITH et al., Appellants, v. DANIEL PETTEE et al., Respondents.

Defendants contracted to purchase of plaintiffs 170 tons, more or less, of "No. 1 wrought scrap iron," 100 tons to arrive by ship "Christopher;" 103 tons of iron arrived by ship "St. Christopher;" about eight tons were of a quality different from that stated in the contract. Defendants refused to receive the iron when tendered, the only objection raised being that they had purchased no iron on the St. Christopher.

In an action upon the contract, *held*, that the objection raised was untenable; and that defendants could not avail themselves of the objection that, of the iron on the vessel, there were eight tons which they were not bound to accept, as, if the refusal had been based upon that ground, the eight tons could have been separated, and a tender of the balance made, which would have been a substantial performance of the agreement.

Upon refusal by the vendee to accept goods sold, when properly tendered, under and in pursuance of the contract of sale, the vendor has, at his election, the right to sell the goods on account of the vendee, and to hold him liable for the difference between the contract price and the price realized for the goods.

Having so elected, and having notified the vendee, the vendor becomes the agent of the former for the purposes of the sale, and is bound to the exercise of good faith and reasonable diligence to effect a sale at the best price; and, *it seems*, is bound to obey any instructions given him by the vendee as to the time and manner of sale, which he can follow without sacrificing his lien under the contract; in the absence of such instruction, he has the right to exercise his own discretion within reasonable bounds.

The judgment herein, which was entered upon the report of a referee, was reversed by the General Term; the order of reversal did not state that it was upon questions of fact. The referee found that, after refusal of defendants to accept the iron, and, within a reasonable time, plaintiffs sold the iron for the market price at time of sale; it appeared by the evidence that, immediately after defendant's refusal to accept, plaintiffs notified them of their election to sell for account of defendants. A sale was made about five months thereafter. There was some evidence as to prior unsuccessful efforts to sell the iron. *Held*, that it did not appear that the conclusion reached by the referee was so wholly unsupported by evidence as to justify a holding that it was an error of law, for which the judgment should be reversed.

Also *held*, that an exception to a refusal of the referee to decide that the rule of damages was the difference between the contract price and what the iron could be sold for within the *shortest* reasonable time after breach of the contract, could not be sustained; that all that was required was

a sale within a reasonable time, and the sale could not be invalidated by proof that it might have been made sooner.

*Smith* v. *Pettee* (7 Hun, 334) reversed.

(Argued April 25, 1877; decided May 22, 1877.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiffs, entered upon the report of a referee. (Mem. of decision below, 7 Hun, 334.)

This action was brought to recover damages for the alleged non-performance of a contract, for the purchase by defendants from plaintiffs of a quantity of iron.

The agreement was in writing, dated June 17th, 1872. By its terms the defendants agreed to purchase and receive one hundred and seventy tons, more or less, of wrought scrap iron, to arrive by ship; seventy tons by the "*Elpis*," and one hundred tons on the "*Christopher*," and to pay therefor the price of sixty dollars per ton of 2240 pounds, but light iron at half price, by their notes, with interest at sixty days from date of the invoice and weigher's return, which return was to decide the quantity. The iron by the "*Elpis*" was received without controversy; the residue was laden on the ship called "*St. Christopher*." It appeared that the iron was laden upon and carried by the only ship employed by the plaintiffs for that purpose, and that it was the one designated and referred to in the agreement. On the 20th of June, 1872, the ship arrived in the port of New York, and the iron was offered to the defendants in performance of the terms of the contract, but they refused to receive it because they had purchased no iron to arrive on the "*St. Christopher*." They assigned no other reason for their refusal. It appeared that there was about 103 tons of iron on the "*St. Christopher*," about eight tons of which was of a different quality from that contracted for; no objection was made on this account, and no allegation of any fault in the iron tendered was set up in the answer.

The referee found, as facts, the following among others: That the defendants failed to perform the terms and condi-

Statement of case.

tions on their part to be performed, and declined to receive of said iron, one hundred and three tons, two quarters and twenty-four pounds (the cargo of the *St. Christopher*), and to pay the agreed upon price therefor. That the plaintiffs thereafter and within a reasonable time, sold said iron for the market price at the time of sale. He directed judgment for the difference between the contract price and the price for which the iron was sold; deducting therefrom the reasonable and necessary expenses of sale; the iron was sold in November, 1872; some evidence was given of unsuccessful efforts on their part to sell before that time. Defendants' counsel asked the referee to find that the rule of damages, even if the defendants had failed to fulfill their contract, was the difference between the contract price and what it could be sold for within the shortest reasonable time after such breach. The referee refused so to find, to which ruling the defendants' counsel duly excepted.

*John N. Whiting*, for the appellants. The whole amount of iron could not be rejected, because a small portion differed in quality from the general description. (*Pembroke Iron Co.* v. *Parsons*, 5 Gray, 589; Benj. on Sales, §§ 691, 900.) The contract was entire and embraced the iron on both ships. (*Sands* v. *Taylor*, 5 J. R., 395; *Day* v. *Pool*, 52 N. Y., 416; Benj. on Sales, § 898.) Plaintiffs acted in accordance with their duty in the premises. (*Dustan* v. *McAndrew*, 10 Bosw., 130; 44 N. Y., 72; *Lewis* v. *Greider*, 51 id., 231; *Sands* v. *Taylor*, 5 J. R., 395; Chit. on Con., 330; 1 Pars. on Con., 446; *Pollen* v. *Le Roy*, 30 N. Y.; *Lewis* v. *Greider*, 49 Barb., 606.) The proof of custom in fact and as being well known to defendants was proper. (*Wadsworth* v. *Alcott*, 6 N. Y., 64, 72; 1 Greenl. on Ev., § 291.)

*Thomas Darlington*, for the respondents. Plaintiffs were bound to tender iron of the character and quality called for by the contract. (*Shields* v. *Pettee*, 4 N. Y., 124; *Brown* v.

*Weber*, 38 id., 187; *Paige* v. *Olt*, 5 Den., 406; *Nelson* v. *Plimpton F. P. Co.*, 55 N. Y., 480.)

Rapallo, J. This is an appeal from an order granting a new trial, in a case tried before a referee. The reversal of the judgment entered on his report was on questions of law only. Consequently our review must be confined to the questions of law raised by exceptions to his rulings upon the trial, and to his findings and conclusions. Unless we find some of these exceptions to be well taken, the order must be reversed and the judgment entered upon the report of the referee affirmed. The findings contained in the report are sufficient to sustain the judgment. No error of law appears in comparing these findings with the conclusion of law based thereon. The only exceptions taken to them relate to matters of fact, or mixed questions of law and fact. Most of these exceptions are clearly unsustainable. They are based upon two grounds: first, that by the terms of the contract upon which the action is brought, the iron, for the non-acceptance of which the defendants are sued, was to arrive by the "*Christopher*," whereas in fact it arrived by the "*St. Christopher*," and by reason of this slight misnomer of the vessel the defendants sought to repudiate their contract, without showing that there was any misunderstanding in fact as to the vessel intended, or any consequence whatever of the misnomer. The second class of exceptions relate to the quality of the iron. The contract was for 170 tons more or less, of No. 1 wrought scrap-iron, to arrive per ships as follows: "*Elpis*," 70 tons; "*Christopher*," 100 tons, light iron at half price. No complaint was made with regard to the iron per "*Elpis*." The only objection raised to the other iron was that the name of the vessel by which it arrived was "*St. Christopner*," instead of "*Christopher*." The defendants did not, on the tender of the iron to them, make any objection to its quality, or that the quantity was deficient, but stood upon the ground that the name of the vessel differed from that written in their contract, and upon that ground only.

Even in their answer to the complaint in this action, they do not set up any fault in the iron tendered to them; but upon the trial they gave evidence that out of the 103 tons or thereabouts which arrived by the St. Christopher, seven or eight tons were of a quality not embraced in the contract, and they seek to avail themselves now of that fact. Technical answers might be given to this claim, but the best one is that it is not founded in good faith. If the objection to receive the iron had been placed on the ground that among the 103 tons tendered there were eight which the defendants were not bound to accept, the plaintiffs could have separated these eight tons from the general mass, and would still have performed their contract by tendering the ninety-five tons, which would have been a substantial performance of the agreement, which was for 170 tons, more or less, by the two vessels; but by making the misleading and frivolous objection which they did, they prevented the plaintiffs from doing anything to supply the alleged defect. It is evident that the refusal to accept the iron was not on account of these eight tons, but that it was an unjustifiable refusal by the defendants on frivolous grounds to perform the contract they had made.

The contract having been broken, the plaintiffs sought to fix the amount of their reclamation, and for that purpose sold the iron. The referee finds that this sale was made within a reasonable time after the breach, and for the market price at the time of sale. There is nothing in the facts found showing any error in this conclusion, nor affording any material for deciding, as a question of law, whether the time was or was not reasonable. The length of time, the circumstances attending the sale, and the state of the market, are not found. The only point which the defendants can make in this court in respect to this finding is that there was no evidence whatever to support it. If the General Term had reversed the judgment on questions of fact it would have been our duty to examine the evidence and ascertain whether it satisfactorily established such a state of facts as authorized the referee to find that the sale was made within a reasonable

time, but as now presented, the only question before us is whether there was any evidence in the case tending to show such a state of facts. A case must be made out very clearly to require us to reverse or sustain the reversal of a judgment on the ground that findings of facts are so wholly unsupported as to be errors of law. There was evidence in this case that immediately after the refusal of the defendant to accept the iron, the plaintiffs notified them of their election to sell it for the account of the defendants and hold them liable for the difference between the purchase price and the price the iron should realize. The plaintiffs thus promptly took their position, and became agents of the defendants for the sale of the iron, and bound to the exercise of good faith and reasonable diligence to effect the sale at the best price. They would doubtless have been bound to obey any instructions which the defendants might have given them as to the time and manner of sale, and which they could follow without sacrificing the lien they had on the iron for the contract price. In the absence of any such instructions they had the right to exercise their discretion within reasonable bounds. There was some proof in the case as to the efforts made by them to sell the iron, and whatever our opinion might be as to the weight of the evidence, were that question before us, we cannot say that the conclusion reached by the referee was so wholly unsupported by evidence as to justify us in holding that it was an error of law for which the judgment should have been reversed.

The exception to the refusal of the referee to decide that the rule of damages was the difference between the contract price and what the iron could be sold for within the shortest reasonable time after the breach of the contract, cannot be sustained. If made within a reasonable time that is all that can be required, and the sale cannot be invalidated by showing that it might have been made sooner than it was.

Without expressing dissent from the reasoning of the General Term upon which their order was based, we think that there were not sufficient facts found to raise the

questions discussed, and justify the reversal on questions of law.

We have examined all the exceptions referred to in the respondents points, and do not find any upon which the reversal can be sustained.

The order of the General Term should be reversed and the judgment entered upon the report of the referee affirmed with costs.

All concur.

Order reversed and judgment accordingly.