BETSEY WHITMAN, as Administratrix, etc., Respondent, *v.* MATTHEW F. FOLEY et al., as Administrators, etc., Appellants.

Any question as to the sufficiency of an answer to put in issue the averments of the complaint is waived by proceeding to trial upon the merits without objection, and the failure to present the question by proper motion or exception precludes its consideration on appeal.

As, where an order of General Term reversing a judgment in an action tried by the court or a referee, and granting a new trial, does not state that the reversal was on the facts, it must be presumed that it was for error of law (Code Civ. Pro. § 1338), no question can be considered here in such a case, except questions of law which are presented by exception.

Where a finding of fact is excepted to, the record is simply to be examined for the purpose of determining whether there is any evidence to sustain the finding, and so whether the exception presents a question of law.

In an action to foreclose two mortgages upon the same premises, one of which was executed to W., plaintiff's intestate, and the other purchased by him, defendants claimed payments to have been made to W. aside from those indorsed upon the accompanying bonds. It appeared that defendants, who were uneducated persons, had taken no receipts for payments made; that W. appeared before the board of assessors on "grievance day," in 1885, and stated that defendants had paid their mortgage, "the interest and principal to $500, or thereabouts," and in his affidavit he stated that

he had "but one mortgage at the present time upon which there is now due about $500," and said board thereupon reduced his assessment by that sum. The referee found that there was due "upon said bonds and mortgages, * * * or upon whichsoever one of them was then unpaid, the sum of five hundred dollars and no more," at the date of such appearance. *Held*, that the indorsements upon the bonds were not conclusive, as matter of law, as to the amount paid; and that it could not be said the finding was so wholly unsupported by the evidence as to justify the court in holding that it was error in law.

To warrant the exclusion of evidence, under the provision of the Code of Civil Procedure (§ 829), prohibiting a person interested, or one through whom a party or person interested derived title or interest, from testifying in relation to personal transactions or communications with a deceased person as against his personal representatives, the disqualification must clearly appear, and not be a matter of inference.

Where a wife is a party, her husband is not excluded under said provision, and this, although he has acted as his wife's agent.

Where, at the time objection is made to the testimony of a witness as to personal transactions with a deceased person, it has not been made to appear that the witness is disqualified, under said provision, the fact that, subsequently, proof is made showing such disqualification, does not render the reception of the testimony erroneous; an objection cannot be made good and be availed of by reason of subsequent proof.

*It seems*, that to avail himself of such proof, the party raising the objection should move to strike out the testimony.

(Argued February 5, 1891; decided February 24, 1891.)

APPEAL from order of the General Term of the Supreme Court in the fifth judicial department, made October 1, 1889, which reversed a judgment in favor of defendants entered upon the report of a referee and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William E. Hughitt* for appellants. Questions of law only are or can be here for review. (Code Civ. Pro. §§ 993, 1337, 1338.) An appellate court will not set aside or reverse the findings of a trial court on a question of fact unless manifestly against or contrary to evidence. (*Sherwood* v. *Hauser*, 94 N. Y. 626; *Von Wien* v. *S. U. Ins. Co.*, 118 id. 94.) Allowing Peter Dean to testify that he, as agent for his wife, paid $300 in April, 1883, and made other payments on the mortgages,

was right. (*Sanford* v. *Ellithorpe*, 95 N. Y. 48; *Nearpass* v. *Gilman*, 104 id. 506; *Rugg* v. *Rugg*, 83 id. 592; *In re Wilson*, 103 id. 374–376; *Gay* v. *Seibold*, 97 id. 472; 108 id. 524; 109 id. 568; 115 id. 506.)

*John D. Teller* for respondent. The findings of the referee were not only unsupported by, but were contrary to the proof. (*McKyring* v. *Bull*, 16 N. Y. 304; Code Civ. Pro. § 514.) The evidence of Peter Dean as to payments made to George A. Whitman in his life-time upon the bonds in question was improperly admitted. (Code Civ. Pro. § 829; *Bockes* v. *Lansing*, 13 Hun, 43; *Richardson* v. *Warner*, Id. 16; Morrill on Competency of Witnesses, 10; *Mattoon* v. *Young*, 45 N. Y. 699; *Conway* v. *Moulton*, 6 Hun, 650; *Smith* v. *Cross*, 90 N. Y. 556.) John Foley, under objection, is allowed to testify as to a statement made to one Sisson, of payments claimed to have been made by him (Foley) upon the bonds in question. The referee seems to have allowed this evidence because of the fact that defendant Matthew Foley was present; at the most, it could have been considered but an admission upon the part of Matthew Foley, and not having been made in the presence of plaintiff, was clearly objectionable. (*Mackay* v. *Lewis*, 73 N. Y. 382; *Krekeler* v. *Thaule*, 73 id. 608; *Scott* v. *Morgan*, 94 id. 508.) The defendants should be concluded by the admissions of their answers. (Wood's Pr. Ev. 509, 585; 2 M. & G. 307; *Gerty* v. *Town of Hamlin*, 46 Hun, 4; *Crosbie* v. *Leary*, 6 Bosw. 312; *Thomas* v. *Austin*, 4 Barb. 265; *Paige* v. *Willett*, 38 N. Y. 28; 4 E. D. Smith, 325; *Bridge* v. *Payson*, 5 Sandf. 210.) The declarations of George A. Whitman before the assessors were misconstrued by the referee. (Wood's Pr. Ev. 578, 579; Abbot's Tr. Ev. 460.) The motion for a new trial at the Special Term should have been granted. (Code Civ. Pro. § 1004, 1015, 1232; *Mackay* v. *Lewis*, 73 N. Y. 382.)

GRAY, J. The plaintiff brought this action for a foreclosure of two mortgages, alleging a certain indebtedness to be due upon the bonds for principal and interest. These appellants

answered, alleging that the sums mentioned in the complaint were not due nor unpaid, and that sums were paid thereon, "the times of payment and the amounts these defendants are not now able to state."

The form of their pleading is open to the respondent's criticism, and it is both inartistic and loose; but it cannot be taken as containing any admission of the plaintiff's allegations as to the amount due from the defendants, and, whatever the objections to its sufficiency, they must be deemed to have been waived by proceeding to a trial upon the merits. The failure to raise any such question by a proper motion or exception precludes its discussion in the appellate court. (*Cowing* v. *Altman*, 79 N. Y. 167.) The issue was presented as to the amount for which the mortgage deeds were still a lien upon the lands described in the complaint, and that was the issue which was referred to the referee to hear and determine. Upon that determination depended the computation which he was ordered to make of the amount due to the plaintiff. The uncertainty respecting the amount due upon the bonds may be accounted for, by reason of the death of the obligee and of the failure of the debtors to have any receipts for payments. None seem ever to have been taken. The defendants were uneducated persons and ignorant of business methods, and, in their confidence in the plaintiff's intestate, they had neglected to take the usual precautions to vouch for these payments. There were indorsements upon the bonds of payments made at various times, and the plaintiff relied upon them as solely evidencing the basis for a computation of the amount for which the mortgages were. enforceable. The defendants adduced and relied upon certain evidence of admissions or declarations made by the plaintiff's intestate to others, respecting the amount of the indebtedness. The referee made this finding as to the payments, viz. :

" That sundry payments were made upon said bonds by said John D. Foley and others, but it was not proven before me in every instance what were the amounts or dates of said several payments, nor upon which of said bonds the same were applied.

But such payments were to such an amount that on the 19th day of August, 1885, there was due upon both said bonds and mortgages to said George A. Whitman, or upon whichever one of the same was then unpaid, the sum of five hundred dollars, and no more."

Upon that finding of fact followed the referee's legal con- clusions that the plaintiff was entitled to the usual judgment of foreclosure and sale and to payment from the proceeds of sale. The finding was excepted to by plaintiff, but the court, at Special Term, sustained the referee's report and decreed in conformity therewith. Upon plaintiff's appeal the General Term reversed the judgment and ordered a new trial. As their order did not state that the reversal was on the facts, it must be presumed that it was for some error of law. (Code of Civil Procedure, § 1338.) It, therefore, is incumbent upon us to examine the record, in order to discover whether any exceptions to the referee's findings of fact raised any question of law from their not being supported by evidence, or whether in the course of the trial the referee committed such errors in his rulings as, being excepted to, would have justified the General Term's order. By their opinion alone we cannot be guided and the respondent here is entitled to the benefit of any legal errors committed by the referee, which would have rendered a new trial necessary.

The plaintiff excepted to the referee's finding that the amount due on the 19th day of August, 1885, was the sum of $500, and no more. If there was no evidence to support such a finding, a question of law was presented and the error was most grave; for the question went to the very foundation of the judgment of the court. The finding directly affected and led to the conclusion reached by the referee, as to the amount for which the mortgages were enforceable. The bonds and mortgages were executed in 1870 by John D. Foley, a previous owner of the mortgaged premises; one having been delivered to the plaintiff's intestate, and the other one to Jane Calvert, and affected the same premises. Subsequently the intestate acquired the Calvert bond and

mortgage by assignment. John D. Foley was made a party defendant, with the present owners of the property; but he was able to prove a release from his bonds, and had judgment in his favor. The present owners, these appellants, being without receipts, and unable to prove any particular payment on account of the bonded indebtedness, not indorsed upon the bonds, undertook to establish the extent to which the debt had been reduced by witnesses, to whom the deceased mortgagee had made statements upon the subject. Among these witnesses were two of the assessors of the town, in which the deceased was a resident, and it is their evidence upon which the referee concededly relied. The assessor for the particular district where Whitman, the plaintiff's intestate, lived was his neighbor for many years. In the year 1883, while making his preliminary rounds for assessment purposes, and discovering the two Foley mortgages of record, he spoke to Whitman of them and of the amount they represented, in connection with the amount of his taxable personal property'; whereupon Whitman said it must be a mistake as he never owned but one. The assessor, however, said he would assess him for $4,000. Subsequently, on the day for hearing objections to assessments, commonly termed "grievance day," Whitman appeared before the board of assessors and made an affidavit that he had "one mortgage worth about $1,000, and no more taxable personal property." Thereupon, his assessment was reduced to $700. The same assessor testified to another conversation with Whitman, relating to his assessment in the following year. He told him he had certainly found two mortgages recorded in his name. Whitman, in answer, said, "Well, if there is, they are pretty much all paid." On "grievance day," the assessment was reduced to $600. The next year, 1885, on "grievance day," again, Whitman appeared before the assessors and was examined under oath. The same assessor, as witness, testifies, that Whitman said "$500 was all we could put him down." Upon being asked "if the Foley boys had paid their mortgage off to $500," he said, "yes, they had paid the interest and principal to $500 or thereabouts." In his affidavit on that

occasion, he swore that he had " but one mortgage at the present time upon which there is now due about $500." The board of assessors thereupon reduced his assessment to that sum.

The testimony of this witness was supplemented by that of another of the assessors, and it was more or less corroborative, to the effect that " something was said about the indebtedness of the Foleys. * * * I think he swore the amount unpaid on that was $500, I think that was what we assessed it. * * * I think we agreed to assess that year (1885) at full value." The witness was not very certain as to whether it was in 1883 or 1885 that the Foley indebtedness was mentioned, and rather thought, afterwards, that it must have been in 1883, when it was stated at $1,000. He explains his not remembering very particularly by the statement that the other assessor did the questioning, as he had assessed the property, and they, the other assessors, " didn't have much to say about it."

This evidence in behalf of the defendants was offset by testimony as to their attempts to compromise with plaintiff for a sum so large as to amount to more than the aggregate of the two principal sums; but that was denied by the defendants. The evidence was not of the most satisfactory kind, and the case, as presented finally to the referee, made a somewhat unsteady basis for the computation of the amount due, if he went outside of the indorsements on the bonds. But they were not conclusive upon him as to the whole amount paid to and received by the obligee, as matter of law. They were some evidence; but were to be considered and weighed by the referee with all the other evidence adduced, in determining as to how far the indebtedness had been in fact reduced by payments. Payment, like any other question of fact, can be proved by extrinsic facts. Here the defendants' mouths were sealed. They were prevented from testifying as to personal transactions, by reason of their creditor's death. Some evidence is discovered of statements made by the deceased to others, concerning the amount of the indebtedness to him, represented

by the Foley mortgages and upon an occasion when it was
essential he should state it solemnly and correctly. Shall we
say that it is worthless evidence? Can we say that the referee
had no legal right to consider it, and to give it weight?
Clearly not. If it was not the most certain proof, it was
more than circumstantial. If it was unsatisfactory evidence
in degree, that made it all the more a matter proper to be
finally disposed of by the referee's decision. The case of
*Metropolitan Bank* v. *Smith* (4 Robt. 229), in which ROBERT-
SON, Ch. J., wrote, illustrates how far courts have gone in
refusing to disturb a verdict based on circumstantial evi-
dence of payment, as against direct evidence. There may
have been discrepancies in the evidence adduced by the defend-
ants, and it is conceivable, if the question of the weight of
the evidence was before us and the facts were open to our
review, as upon a reversal by the General Term upon ques-
tions of facts, that we might entertain a different opinion as
to the reduction of indebtedness, and that we might agree that
the judgment upon the report should be reversed. But we
cannot say that the referee's conclusion was so wholly unsup-
ported by evidence, as to justify us in holding that it was
an error in law; and, under the well-settled rule in such cases,
if the exception to the finding was not well taken, and the
finding warranted the judgment, that judgment must be
upheld here. (*Smith* v. *Pettee*, 70 N. Y. 13.)

It may be observed here that the evidence of the assessors,
upon which the referee has relied, does not violate all the pre-
sumptions which are entertainable. Although on their face the
bonds appeared to have been long past due by their terms, and
there were large arrearages of payments for interest and instal-
ments of principal, yet the deceased had not instituted any
foreclosure proceedings; and, again, one witness testified that
the deceased had said to him, early in 1885, that the Foley
boys "were paying from five to seven hundred dollars a year."
Such facts might lend credence to the assessors' evidence, in
the referee's mind. There was not necessarily such inconsist-
ency in the affidavits of the deceased, filed with the assessors,

with the facts, as to discredit them as evidence of the amount due. · In swearing to his having only one mortgage, he may have considered that one, only, ran to himself; or he may have considered one as paid up by the application of payments; or he may have regarded the whole matter as one debt. But it is only a discrepancy in evidence. It was at most a matter to excite the referee's doubts. He had the positive testimony that in August, 1884, the intestate stated that the mortgages were "pretty much all paid," and that in August, 1885, he stated under oath that "the Foley boys had paid their mortgage off to $500." He had the right to believe and to find, as a fact, that that sum represented all that was then due the deceased.

The respondent insists upon the error of the referee in permitting Peter Dean to testify to a payment made to the intestate in 1883. The objection was that he was "a party under whom the defendants claim and an acting agent for his wife," who was one of the owners of the property and a defendant. He was not a party, nor interested in the result, and section 829 of the Code of Civil Procedure did not prevent him from testifying, merely because he had acted as his wife's agent. (*Nearpass* v. *Gilman*, 104 N. Y. 506.) Nor did he appear to be disqualified to testify, as being a person under whom the defendants derived their interest, within that section of the Code. It had not appeared that the defendants derived title through him, nor what was the nature of his interest. To warrant the exclusion of the evidence of a party, under this section, his disqualification must clearly appear and not be a matter of inference. The respondent claims that subsequently and towards the end of the trial, the fact of a previous sale to the witness was proved. Conceding that fact, to have availed herself of it, her proper course was then to move to strike out the witness's previous testimony.

An objection cannot be made good and be availed of by reason of subsequent proof. If the evidence was shown to have been inadmissible by facts subsequently appearing, a motion on that ground could have been made and granted. But, even if there could be any doubt as to the legal propriety

of the evidence, no possible prejudice could have occurred to the plaintiff, for the referee's decision disregarded such proof and was placed upon the evidence of what the deceased had declared to be due, in 1885.

Another exception, which the respondent argues, related to the objection taken to the testimony of John Foley, a predecessor in interest of the defendants, as to what was said by him in a conversation in the presence of defendant Matthew Foley, upon the occasion of a visit to the plaintiff. The conversation was with plaintiff's son-in-law and was upon the subject of interest payments. The objection is general, no ground being stated. For that reason and because, under the findings and conclusions of the referee, the answer could not have affected the plaintiff in the slightest degree, the exception is untenable.

We find no errors of law committed upon the trial, or in the findings of the referee, and it was error to order a new trial.

The order of the General Term should be reversed and the judgment of the court at Special Term affirmed, with costs to the appellant at the General Term and in this court.

All concur.

Order reversed and judgment affirmed.