MARIA A. LEWIS, Appellant, *v.* JULIA R. DUANE, as Admin·
istratrix, etc., Respondent.

A mortgage given to secure the payment of commercial paper or judgments up to a certain fixed amount is not given to secure unliquidated
damages, and it may be foreclosed by advertisement.

Where such a mortgage is so foreclosed, and proper notices of sale are
served, which disclose the amount claimed to be due thereon, and the
mortgagor stands by silently and with approval, making no complaint
as to the amount asserted to be due until long after the sale, in the
absence of any claim of fraud this court will be slow to criticise or dispute that amount.

An attorney employed to foreclose a mortgage has no implied authority to
compromise the rights of his client and make nugatory the duty he was
employed to perform.

In June, 1873, L. executed to D. a mortgage as security for the payment
of the sum of $60,000, which sum by the terms of the mortgage was to
be paid one year from date.   An agreement was executed by D. at the
same time stating the intent of the mortgage to be to secure him
against liability as indorser for L., the amount of which was stated
to be unknown but supposed to be about $32,000; also to secure
advances to satisfy judgments which were a lien upon the lands mortgaged, D. agreeing to take care of and protect L. and his property
from the enforcement of any of said judgments.   During the year D.
paid out large sums of money under the agreement; a year thereafter
he foreclosed the mortgage by advertisement.   The foreclosure was
conducted in accordance with the statute.   The notice, which stated the
amount claimed to be due on the mortgage, was duly served on L.   In
an action brought in September, 1883, against the executrix of D. for
an accounting and to redeem the lands sold under the mortgage, it
appeared that at the time of the foreclosure D. had paid out under the
agreement over $42,000, and that there remained outstanding, judgments
which were liens on the premises to the amount of $20,000; also that
there was indorsed paper outstanding, the whole amounting to much
more than the sum secured.   It was claimed by plaintiff that the foreclosure was premature because D. had not paid off all of the judgments.   *Held*, untenable; that the agreement did not alter or change the
maturity of the mortgage, and while D. became bound for the eventual
payment of the judgments, he had the right, after the expiration of the
year, to resort to the property itself for the means of carrying out the
contract, he being bound in the meantime only to pay judgments when
necessary to prevent a sacrifice of the property or an enforcement
against L. personally.

Also, *held*, that the mortgage was properly foreclosed by advertisement; that it was not given to secure unliquidated damages, as the indorsed paper and judgments were for settled and fixed amounts, and all that was necessary to ascertain the sum for which the mortgage stood as security was to add them together.

It was claimed that the papers executed constituted a trust. *Held*, untenable; that the relations of the parties were simply those of mortgagor and mortgagee.

It appeared that D. in some cases when he paid judgments did not have them discharged of record, but caused them to be transferred to his wife, who was a sister of L.; this was done with the assent of the latter. *Held*, that as none of the property of L. was wasted or sacrificed on execution sales, the agreement of D. was fully performed; that the mode of protecting L. resorted to was within the scope of the agreement.

The attorney who foreclosed the mortgage for D. was dead at the time of the trial. Plaintiff offered to prove that said attorney told L. that the foreclosure would make no difference as to the agreement between him and D. This was objected to and excluded. *Held*, no error.

Reported below, 69 Hun, 28.

(Argued January 30, 1894; decided February 27, 1894.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made April 25, 1893, which affirmed a judgment in favor of defendant entered upon the report of a referee.

This action was brought in September, 1883, against defendant individually and as administratrix of Patrick H. Drake, and as executrix of Jane E. and Virginia M. Drake, for an accounting and to redeem certain lands which Patrick H. Drake had claimed to own as purchaser under the foreclosure of a mortgage executed to him by Frederick Lewis and wife. The action was commenced by said Lewis and his wife and he having died has been continued by the latter as successor in interest.

The said mortgage was by its terms executed to secure the payment of $60,000 one year from date, with interest. An agreement was executed by said Drake at the same time of which the following is a copy:

" Frederick Lewis and Maria A. Lewis, his wife, both of the city of Binghamton, Broome county, N. Y., have this 4th

day of June, 1873, executed and delivered to Patrick H. Drake, of the city and county of New York, a mortgage upon all their real estate situate in the said county of Broome, for sixty thousand (60,000) dollars. The value of the property covered by the said mortgage is about one hundred thousand (100,000) dollars.

" The intention of the undersigned by this said mortgage is to secure the said Drake against all liability he has or may have incurred as indorser for the said Lewis. The precise amount of such liability as such indorser is unknown, but supposed to be about thirty-two thousand (32,000) dollars.

" And also to secure the said Drake for advances which he is to make to liquidate and satisfy the large amount of judgments against the said Lewis which are a lien upon the property covered by the said mortgage.

" The said Drake in the taking of the said mortgage only desires to secure himself for the amount of his liability as such indorser, and for the advances which he is to make in taking up and satisfying the judgments against the said Lewis. Anything more than this is not contemplated by the said Drake.

" When the amount of such liabilities and advances is ascertained or liquidated then the said Drake to indorse same, or reduce said mortgage to the true amount so advanced by him. In case he shall assign or part with the control of the said mortgage, he is to account to the said Lewis for the full amount that said Lewis may have to pay upon the same, or which he will be liable to pay to the holder thereof. In the meantime the said Drake will take care of and protect the said Lewis and his property from the enforcement of any of the judgments against the said Lewis or his property and save the property of the said Lewis from sacrifice, and the said Lewis from damages and costs.

" And that he will at any time assign said mortgage to said Lewis' order upon being reimbursed on his advances, in case he shall not have previously assigned the same."

The material facts are stated in the opinion.

*Edward K. Clark* and *Roger P. Clark* for appellant.
The statutory foreclosure was premature, void, voidable or
inoperative. (*Warner* v. *Blakeman*, 36 Barb. 501; *Casserly*
v. *Witherbee*, 119 N. Y. 522; *Hamilton* v. *Taylor*, 18 id.
361; *Church* v. *Brown*, 21 id. 319; *Parks* v. *Comstock*, 59
Barb. 33; *Horn* v. *Keteltas*, 46 N. Y. 605; *Macauley* v.
*Smith*, 132 id. 530; *Hall* v. *Bartlett*, 9 Barb. 300; Crary's
Special Proceedings [1st ed.], 59; *Mowry* v. *Sanborn*, 68 N.
Y. 161; *Low* v. *Purdy*, 2 Lans. 424; *Mackenzie* v. *Alster*,
64 How. Pr. 389; *Van Schaack* v. *Saunders*, 32 Hun, 518;
*Spencer* v. *Annon*, 4 Minn. 542; *Ferguson* v. *Kimball*, 3
Barb. Ch. 619; Willard's Real Estate, 143; *Campbell* v.
*Swan*, 48 Barb. 112; *Stewart* v. *Hutchins*, 13 Wend. 485;
*Wilkins* v. *Gordon*, 11 Leigh [Va.], 547; *Gibson* v. *Jones*,
5 Leigh, 370; *Riggs* v. *Armstrong*, 23 W. Va. 760; Jones
on Mort. [4th ed.] § 1776; *Kornegay* v. *Spicer*, 76 N. C. 95;
*Mosby* v. *Hodge*, Id. 387; *Pritchard* v. *Sanderson*, 84 id.
299; *Bridgers* v. *Morris*, 90 id. 32; *Gooch* v. *Vaughan*, 92
id. 610; *Baldwin* v. *Allison*, 4 Minn. 25, 30; 2 Perry on
Trusts, § 602; *Soule* v. *Ludlow*, 3 Hun, 504, 505; *Jenks* v.
*Alexander*, 11 Paige Ch. 624; *Howard* v. *Ames*, 3 Metc.
311.) The transaction created a trust. (*McArthur* v. *Gordon*, 51 Hun, 511; *Park* v. *Comstock*, 59 Barb. 33; *Horn* v.
*Keteltas*, 46 N. Y. 608; *Macauley* v. *Smith*, 132 id. 524;
*Clark* v. *Henry*, 2 Cow. 324; *Hoyt* v. *Martense*, 16 N. Y.
231; *Dalton* v. *Smith*, 86 id. 176; *Slee* v. *M. Co.*, 1 Paige,
48; *Brown* v. *Tyler*, 8 Gray, 135; *Stevens* v. *Dedham, etc.*,
126 Mass. 547; *Terrett* v. *Crombie*, 6 Lans. 58.) Mr. Drake
and his successors in the benefits are liable under his express
contract. (*Hall* v. *Bartlett*, 9 Barb. 300; *King* v. *Platt*, 37
N. Y. 155; 34 How. 26; *Howell* v. *Mills*, 53 N. Y. 333;
*Burnet* v. *Denniston*, 5 Johns. Ch. 35; *McMurray* v.
*McMurray*, 60 Barb. 127; 66 N. Y. 175, 180, 181; *Hubbell*
v. *Sibley*, 50 id. 468; Code Civ. Pro. § 388; *Warner* v.
*Blakeman*, 4 Keyes, 487.)

*S. C. Millard* for respondent. The claim that Drake, by virtue of the agreement of June 4, 1873, became trustee for Lewis of the property described in the mortgage, ought not, and cannot, be maintained. (Herman on Mort., 204, 205, 206.) The acts and conduct of the parties immediately following the foreclosure sale do not favor plaintiff's claim that Drake, in purchasing the property at the sale, was to hold it as a security or as trustee for Lewis. (*Erwin* v. *Curtiss*, 43 Hun, 292; *Ensign* v. *Ensign*, 120 N. Y. 655.) The foreclosure of the mortgage was not premature. (Jones on Mort. [4th ed.] § 1776.) The statement of the amount due in the notice of .sale was not an error which vitiated the foreclosure proceedings. (*Mowry* v. *Sanborn*, 68 N. Y. 168; *Jenks* v. *Alexan-.der*, 11 Paige, 626.) It is also claimed that the mortgage ·could not be foreclosed by advertisement owing to the fact ·that it was given to secure an unliquidated amount. This is .untenable. (*Bolts* v. *Collins*, 13 Wend. 156; *Mowry* v. *San-.born*, 68 N. Y. 165; Jones on Mort. [4th ed.] § 1776.) The right of the mortgagor to redeem is terminated whenever there has been a sale of the mortgaged premises regularly made, pursuant to the power contained in the mortgage. (*Tuthill* v. *Tracy*, 31 N. Y. 157; *Jackson* v. *Slater*, 5 Wend. .296; *Ingraham* v. *Baldwin*, 12 Barb. 20; *Warner* v. *Blakeman*, 36 id. 518; *Elliott* v. *Wood*, 53 id. 305.) The question, " Did Mr. Hotchkiss tell you, or say to Mr. Lewis in your presence, that the foreclosure should make no difference as to the agreement between Mr. Drake and Mr. Lewis?" was ·improper. (*Anderson* v. *R., W. & O. R. R. Co.*, 54 N. Y. .341; 1 Greenl. on Ev. § 113; *Luby* v. *H. R. R. R. Co.*, 17 N. Y. 131; *Gutchess* v. *Gutchess*, 36 Barb. 483; *Marvin* v. *Wil-.bur*, 52 N. Y. 270; 1 Pars. on Cont. [5th ed.] 39, 40, 45; *Lansing* v. *Coleman*, 58 Barb. 611; 13 N. Y. 637; *Adee* v. *Howe*, 15 Hun, 21; *McKenzie* v. *Harrison*, 120 N. Y. 260; .*Smith* v. *Kerr*, 108 id. 31.)

FINCH, J. The plaintiff's right to an accounting under the agreement which made the mortgage from Lewis to Drake

collateral to certain described liabilities and promised advances of the latter is apparently barred by the foreclosure of that mortgage which has vested the legal title in the purchasers at the sale and extinguished the mortgagor's right of redemption. It is, consequently, over the validity and operative force of that foreclosure and sale that the controversy has been carried on both in the proofs and the argument addressed to the trial court and the General Term, and it is substantially upon that point only that a final judgment is now sought.

The mortgage was given by Frederick Lewis and his wife in June of 1873, to Patrick H. Drake, as security for the sum of sixty thousand dollars to be paid in one year from that date. An agreement executed by the mortgagee at the same time indicates the purpose of the security, the consideration upon which it rested, and the extent to which it was intended to operate. That agreement shows that Lewis was in embarrassed circumstances, unable to pay his debts, and exposed to executions which threatened a sacrifice of his entire property; that he had come to Drake for help and protection, in the hope, by his intervention, of saving something from the wreck; and that the purpose was to put the debtor's property in the hands of Drake, both to secure the latter for his large liability as indorser, and obtain for the former an application of his property, without sacrifice, to the discharge of his debts. The agreement estimates the value of the land mortgaged at "about one hundred thousand dollars," a sum which it did not bring and which was largely in excess of the actual market value; a result not strange in view of the almost invariable tendency of a failing debtor to overestimate the actual value of his assets. The agreement put Drake's liability, as indorser for the mortgagor, at about thirty-two thousand dollars, but conceded that to be only a supposition, and that the true amount was at the moment unknown. Equally uncertain was the total of the judgments against Lewis which were already liens upon the lands mortgaged. Out of these uncertainties the sum of sixty thousand dollars was fixed upon for the purposes of the mortgage, as a sum likely to cover the

prior liens upon the land and Drake's liability as indorser.
Such prior liens he was to assume and discharge, and pay off
the notes which he had indorsed, and so far as he did so to do
it out of his own means during the year of grace which the
mortgage secured to the debtor, and that instrument was to
stand as security for the advances made and to be made and
the indorsed notes paid and discharged.

At the end of the year, and the consequent maturity of the
mortgage debt, Drake had paid out large sums of money under
the agreement which Lewis was unable to reimburse; and it
became obvious that Drake would be compelled to resort to
his security. The drain upon his own resources had become
heavy and was daily increasing; he had borne the burden for
the stipulated time, and since the debtor could not pay, it was
just and proper to resort to his property pledged for that pur-
pose. But Drake was not hasty or impatient. He bore the
burden for still another year, and doubled the time for which
Lewis had stipulated, but no relief came from the debtor and
the hope of any had practically disappeared; and Drake then
foreclosed the mortgage by advertisement and cut off the mort-
gagor's equity. That foreclosure was conducted in conformity
with the statutory provisions, and is not criticized so far as a
due observance of those provisions is concerned, but is assailed
upon grounds which go to the mortgagee's right to foreclose,
to the amount which was asserted to have become due, and to
the consequence claimed to have resulted.

The first proposition of the appellant is that the foreclosure
was premature, because Drake agreed to advance the money
necessary to pay off the incumbering judgments and had done
so only in part. The referee finds as a fact that at the date of
the foreclosure Drake had paid out under the agreement a little
over forty-two thousand dollars, and that there remained out-
standing judgments which were a lien to the amount of twenty
thousand dollars more. Now, the agreement did not purport
to alter or change the maturity of the mortgage. There is no
word in it to that effect. On the contrary, all its provisions
are consistent with the explicit terms of that instrument which

allowed Drake at the end of one year, in case of Lewis'
default, to resort to the mortgaged property itself for the
means of carrying out and fully accomplishing the purposes
of the agreement.   Its stipulations contemplated an assump-
tion by Drake of the judgments which were liens on the prop-
erty, and because it was only after their payment that any
surplus could be reached applicable to his liability as indorser;
but while he became bound for their eventual payment, he
had a right, after one year, to resort to the property itself for
the means of carrying out the contract, and in the meantime
was bound to pay judgments only when necessary to prevent
a sacrifice of the property or an enforcement against Lewis
personally.   The mortgage debt, therefore, was due and pay-
able when the foreclosure proceedings were commenced, and
they were not prematurely instituted; unless there is force in
the further contention that the amount secured was unliqui-
dated, and was to be ascertained as a condition precedent to
the foreclosure.

It may be that where a mortgage is given to secure unliqui-
dated damages they must be fixed and ascertained before the
mortgage can be foreclosed.   Until then it is impossible to know
what sum will redeem the security on the one hand or satisfy
it on the other; but if in such case no foreclosure by adver-
tisement can be had the rule applies only where the damages
are strictly of that character.   What such damages are is
shown in *Butts* v. *Collins* (13 Wend. 156), and what they are
not is settled in *Mowry* v. *Sanborn* (68 N. Y. 153).   The
former case describes them as resting in opinion merely, to be
ascertained by the verdict of a jury, and not susceptible of
computation or calculation.   The latter case sustained a fore-
closure by advertisement where the mortgage was given to
secure outstanding commercial paper up to a certain fixed
amount.   That is the situation here.   The indorsed paper and
the judgments were for settled and ascertained amounts.   To
schedule them correctly and add them together was all that
was necessary to show for what sum the mortgage stood as
security.   Allusion is made to the provision in the agreement

that the mortgage should be indorsed down to the actual amount due on it. That clause operates only when less than the principal is the amount of the debt, and has no application where the latter is in excess and no indorsement at all is requisite or permissible.

And that brings us to the appellant's principal contention; which is that the mortgage was foreclosed for a much larger amount than was due on it. There is no allegation of any fraud upon the mortgagor. Proper notices of sale were served upon him, and they disclosed the claim of Drake that there was due on the mortgage the full amount of principal and interest. Lewis was either present or might have been present at the sale and made neither objection nor protest, and none is heard from him for years thereafter, not even when he is required to surrender possession, and not until Drake's death had lessened the means of explanation. Where no fraud is charged, and the mortgagor stands by silently and with approval, and makes no complaint, we should be very slow to criticize or dispute, long after the sale, the amount asserted to be due.

But in spite of all difficulties flowing from the death of Drake, I think it is made quite apparent that when the mortgage was foreclosed very much more was due than the amount of its principal and interest. The referee finds that at such date Drake had actually paid out upon notes and judgments a little more than forty-two thousand dollars, and that there remained unpaid liens on the property to the amount of at least twenty thousand dollars more, exclusive of the accrued interest thereon. The evidence indicates, according to the computation of the respondent, the details of which are furnished for our inspection, and which appear to be correct, that at the date of the mortgage there were outstanding judgments which were liens on the property and which Drake assumed and agreed to pay and discharge, and which he was obliged to assume before reaching protection for his own liability, to the amount of almost thirty-six thousand dollars, and notes on which he was charged as indorser to the amount of forty thousand dollars more, making a total exceed-

ing the principal of the mortgage by more than fifteen thousand dollars.

Some of the items which enter into the computation are criticized by the plaintiff, and the computation itself assailed for alleged inaccuracies.

It is said that Drake did not in all cases discharge the judgments of record, and assigned or caused some of them to be assigned to his wife. She was Lewis' sister, and the transfers were with his assent. The language of the agreement shows that such a mode of protecting Lewis from damages and costs, and his property from sacrifice was within the scope of the arrangement. The words are: "In the meantime the said Drake will take care of and protect the said Lewis and his property from the enforcement of any of the judgments against the said Lewis or his property, and save the property of said Lewis from sacrifice and the said Lewis from damages and costs." That covenant was fully performed. None of the property was wasted or sacrificed on execution sales; it was all applied to the payment of Lewis' debts; no judgment in any manner charges or menaces his estate; each and all of them are paid; and Drake only is a loser by the transaction.

It is said that until actual advances in payment of judgments were made the latter formed no part of the debt protected by the mortgage. But that was intended as an indemnity to Drake. He did not covenant to pay the outstanding judgments in express terms, but did agree to save Lewis harmless therefrom, and protect him against the sacrifice which would result from their enforcement by execution sales. Drake's liability attached at once, and on appellant's own theory the mortgagee became responsible to the judgment creditors. Whether that be quite true or not, Drake, at least, by the terms of his agreement became liable to Lewis to pay all these judgments so far as necessary to protect him from loss, and took his own security subject to such payments, every one of which was eventually to be discharged. Drake's right to resort to his security sprang up at its maturity and was not postponed until his actual payments   (*Kohler* v. *Matlage,* 72 N. Y. 259.)

It is further insisted that the referee erred in not crediting upon the mortgage a sum of five thousand dollars paid to Drake by Lewis. The proof tends to show that the amount was applied by Drake upon a note of Lewis, outside of and in addition to those embraced in the mortgage consideration.

There are many other criticisms upon the accounts as it respects their details, but these were all submitted to the consideration of the referee and constituted elements of the question of fact upon which his finding ought to be and is conclusive upon us. We are unable to find any just reason for reversing his determination that at the date of the foreclosure at least the full sum of principal and interest was due on the mortgage.

But, assuming that to be true, the plaintiff urges that, by not discharging the judgments on the record, the mortgagee was enabled to make the sale and become the purchaser under the cloud of a seemingly double incumbrance, and so purchasers were prevented from bidding. But the result came from Lewis' assent. Paid judgments were assigned to Mrs. Drake, instead of satisfied of record, with his knowledge and approval. He, at least, knew the truth and did not object. He might have explained, but did not. He might have required Drake to make the record correspond with the fact, but chose not to do so, and evidently preferred in his own interest that Drake should be the successful bidder. It is impossible not to see that such was his attitude. He knew very well that nobody could afford to take the property, burdened with its actual liability, except Drake, to whom it was a necessity if he hoped to obtain any protection; and Lewis occupied the homestead, long after the sale, by Drake's sufferance, while waiting for a purchaser. There is not only no claim of fraud made in the complaint, but not a single allegation of fact pertinent to a setting aside of the sale, and no such relief asked. Whatever of force there might have been under some circumstances in the objection made, it has no just application as a ground of this appeal.

Nor can the effect of the foreclosure be avoided by the con-

tention that the papers executed between the parties constituted a trust. They plainly established the relation of mortgagor and mortgagee, and not that of trustee and beneficiary. The mortgage was, as a mortgage always is, collateral to a debt due or to become due to the mortgagee, which in this case was the liability of Drake as indorser, necessarily increased in the result by the incumbering judgments first to be paid before protection of any kind could be reached. There were about the transaction no elements of trust beyond those which commonly attend a mortgage given as collateral. (*Williams* v. *Townsend*, 31 N. Y. 415.) The result might have been different if Lewis had not been made a party to the foreclosure so that his equity survived.

An effort was made in that direction through the agency of some parol evidence which was excluded at the trial but is now claimed to have been admissible. The attorney foreclosing the mortgage for Drake was Mr. Hotchkiss, who was dead at the time of the trial. Mrs. Lewis was asked this question : " Did Mr. Hotchkiss tell you, or say to Mr. Lewis in your presence, that the foreclosure should make no difference as to the agreement between Mr. Drake and Mr. Frederick Lewis ? " The question was objected to and excluded and the plaintiff took an exception. The only authority of Mr. Hotchkiss was derived from his position as the attorney of Drake in the proceedings for foreclosure. No other agency is shown, and the question presented is whether an attorney employed to foreclose a mortgage has, by virtue of his office, an implied authority to give away the entire right of his client and make nugatory the very duty which he was employed to perform. There ought to be and there can be but one answer to that question. The primary and principal purpose of the foreclosure was to extinguish the equity of redemption. For that purpose the notices were served upon Lewis and his wife, and the whole proceeding was a waste and a nullity without it. To assure the mortgagor that the legal effect of the pending foreclosure should be annulled and the rights of the parties nevertheless remain unchanged was

to give away and destroy the entire right of the client and invalidate the proceeding itself. An attorney, as such, may not compromise the rights of his client outside of his conduct of the action, or accept less than the full satisfaction sought, or release his client's right, or subject him to a new cause of action. (*Arthur* v. *Homestead Fire Ins. Co.*, 78 N. Y. 469; *Barrett* v. *Third Ave. R. R. Co.*, 45 id. 635; *Beers* v. *Hendrickson*, Id. 665.) The evidence offered could only be material by completely annulling the legal effect of the proceedings as against the mortgagor. The attorney had no such authority and the evidence was properly excluded.

Beyond the legal questions involved I have quite carefully gone through the evidence to see if Lewis has been in any manner wronged. There is no possible basis for any such theory unless upon the ground that there was a real surplus of value in the property mortgaged beyond the incumbrances and the conceded debt of Drake. There are some opinions in that direction but the weight of evidence, and especially the plain and decisive facts are the other way. No process can create the desired surplus except one which stands on opinions of cost or intrinsic worth instead of market value for purposes of sale, and which compels Drake to account for the property at double the amount which he was able to get on a sale.

I think the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.