1. WITNESSES—COMPETENCY—TRANSACTION WITH DECEDENT.

Where a wife was the holder of a note purporting to have been indorsed by a deceased person, her husband, who managed his wife's business as if it were his own, she knowing nothing about it, the title being in the wife's name simply to enable the husband to avoid payment of certain debts, is incompetent, under Code Civ. Proc. § 829, to testify in a proceeding for the sale of the decedent's real estate to pay such note, as to the circumstances attending the alleged indorsement.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, §§ 576–579.]

2. EXECUTORS AND ADMINISTRATORS — ALLOWANCE OF CLAIM — EFFECT ON HEIRS—SALES FOR PAYMENT OF DEBTS.

Where a judgment was to the knowledge of the heirs recovered against an administratrix on a note indorsed by her decedent, an attorney assuming to represent the heirs stipulating for an entry of the judgment after 90 days, the heirs were not bound by such judgment, under Code Civ. Proc. § 2755, providing that an heir may contest a claim, though allowed by the administratrix, and were not estopped from disputing the claim in a proceeding for sale of decedent's lands to pay the same.

Application to sell the real estate of Israel Neufeld, deceased, to pay debts. Proceeding dismissed.

Leonard Bronner, for petitioner.
M. F. McGoldrick, for respondents.
Solomon S. Schwartz, for Wm. B. Roth and Marie Jaffe.

CHURCH, S. The deceased herein left a comparatively small personal estate, but was the owner of real estate exceeding $50,000 in valuation. There survived him his widow, who was duly appointed administratrix, and several brothers and sisters, his heirs at law. Upon the application for the sale of his real estate to pay his debts, the said heirs at law have resisted the same, contending that the deceased was not indebted as claimed by the petitioner. The petitioner alleges that the deceased indorsed a certain promissory note for the sum of $1,500, which came into her possession, and, it not being paid at maturity, she seeks to hold the decedent's estate for its payment. And it is also claimed that the deceased indorsed another note for the same amount, which is now held by one Lillian Davidow. It appears to be conceded that the personal estate of the deceased is insufficient to meet these two obligations, if they are valid debts against the estate, and the sole question, therefore, is whether they are valid claims against the deceased.

The petitioner seeks to establish these claims in a twofold manner: First, by proving directly that these notes were duly and properly indorsed by the deceased, and that he did not in his lifetime pay the same; second, by claiming that, in two actions brought by these claimants against the administratrix, the respondents herein, the heirs at

law, appeared by their attorney and stipulated that judgment might be entered therein, and that, therefore, there has been created a complete estoppel of record, which prevents them from contesting the rights of the said claimants in this proceeding.

Taking up the propositions in order, it appears that the two notes were made and that they bore on the back the words: "I. Neufeld." The question is, therefore, whether such indorsement was the indorsement of the deceased. The testimony attempting to establish this fact is not the same in both cases. In connection with the note held by Sarah Rosenfeld, the petitioner, there arises, at the outset, the query as to whether the testimony of the husband of the claimant is competent under section 829 of the Code. The circumstances under which such evidence is offered are as follows: It appears that Sarah Rosenfeld, the petitioner, was the wife of one Samuel Rosenfeld who, several years ago, had been in business on his own account and had failed. Business was now being conducted in the name of Sarah Rosenfeld; but she paid no attention to its management, as her husband managed such business under a power of attorney. Without reviewing the evidence on this head in detail, it may be briefly stated that it appears, beyond controversy, that this business was being conducted by the witness Rosenfeld in the same manner as if it were his own business, the title to the same being simply in the name of his wife so to evade payment to his creditors; and, although thus conducted in the name of his wife, it is evident that she knew no more in relation to it than she would if she had not a penny of interest therein. The petitioner, therefore, offered her husband as a witness to prove the circumstances attending the signing of the note by the deceased, Neufeld, claiming that he was not a party interested in the event.

If this contention is correct, then section 829 of the Code may as well be abolished. The spirit and purpose of such section was to prevent a person who had a transaction with a deceased person, and who was interested in the event of such transaction, from testifying where, by reason of the death of the other party to the transaction, no evidence could be offered to contradict such testimony. The witness Rosenfeld was absolutely the alter ego, not only in name, but in fact, of the petitioner; and to say that, under the Code, the petitioner could not testify, but her husband could, is violating, not only the letter, but the spirit, of section 829. The decisions quoted by the petitioner of Whitman v. Foley, 125 N. Y. 659, 26 N. E. 725, Nearpass v. Gilman, 104 N. Y. 506, 10 N. E. 894, and Hobart v. Hobart, 62 N. Y. 80, do not, in my judgment, authorize the admission of this evidence. Each of those cases was properly decided, in view of the particular circumstances attending the same; but there is nothing contained in any of them which shows any intention by the courts to make valid evidence such as is offered herein.

With the evidence of Rosenfeld thus eliminated, there is no direct evidence showing that the deceased indorsed either of the notes under consideration. An expert is placed upon the stand and is shown what appears to be conceded to be a signature of Israel Neufeld. He says

that, while the indorsement on each of the notes resembles Neufeld's handwriting, if a check was presented to him, at the bank in which he is employed, bearing such a signature by Mr. Neufeld, he would refuse payment of the same. The attorney for the petitioner refers to the testimony of Mr. Franklin as establishing the proposition that this is Mr. Neufeld's signature. An examination of the record will show that the attempts to qualify Mr. Franklin as an expert, so as to take his opinion in relation to this being Mr. Neufeld's signature, were rejected. The only references in Mr. Franklin's evidence in regard to the signature consist in his statement of conversations held between him and the various members of the Neufeld family. These are introduced for another purpose, which will be taken up hereafter; and, of course, mere expressions of opinions on other matters contained therein are not to be regarded as proof of those facts.

If this was the signature of the deceased, obtained in the usual course of business in a perfectly straightforward transaction, under which he or his estate would be responsible, it is remarkable that no direct evidence can be obtained to show that this was so. Not the slightest attempt is made to show that, in connection with this transaction, Mr. Neufeld had any interest whatever. No effort is made to establish that he in any way benefited by these transactions, or that he took part in any way in the same, except, of course, the testimony of the interested witness, Rosenfeld. And the absence of such testimony can only be explained by the fact that any evidence which might show that this was the genuine signature of Mr. Neufeld would also, very probably, establish that the circumstances under which this note was executed were such that he was not responsible therefor and that the petitioner herein is not an innocent holder for value of the same. The attorney for the petitioner seems to appreciate this fact, because the major part of the hearing was devoted to an attempt to show that the heirs at law and owners of this real estate conceded the correctness of these notes in another litigation and that they are estopped from denying such concession now.

The facts in relation to this matter are as follows: The petitioner herein, upon her claim being rejected by the administratrix, brought suit in the Supreme Court against the administratrix, as such, to recover upon the notes in question. She was represented in such action by an attorney, Mr. Franklin. When the case was about to be reached for trial, he notified her that there was no proper defense to such suit, and that these heirs at law should be made aware of that fact, so that they might make provision for taking charge of such litigation. It further appears that a lawyer by the name of Hart, representing some of these heirs, subsequently appeared in court, and that, as a final result of the discussion had, a stipulation was made with the plaintiff to wait 90 days, and at the expiration of that time to permit him to enter judgment. This stipulation was signed by Mr. Hart, as attorney for the various heirs at law, now contesting this proceeding; and the contention is made, therefore, that, as they authorized Mr. Hart to make this

stipulation, they are bound thereby, and cannot now set up any defense to this proceeding.

The testimony on this point is very rambling and confusing. The various parties, the heirs at law, are Hebrews who have come from a province in Russia. Some of them are unable to speak the English language at all, and others but very imperfectly; and none of them, apparently, has a perfectly clear appreciation of the conditions surrounding this litigation. This is not to be wondered at, as it is evident that both Mr. Franklin, who was representing the administratrix, and Mr. Hart, who it is contended represented these heirs at law, did not appreciate the legal effect of the litigation then pending as affecting the rights of the said heirs at law. These two attorneys apparently believed (and so testified on the witness stand) that, as they understood the law in connection with the effect of such litigation, it would be binding as against the respondents herein. And with this end in view they believed that the concession of the plaintiff to wait 90 days was a valuable advantage for the heirs at law, as any judgment which might be obtained would be directly enforceable against the heirs at law and any property which they might possess.

There is not only no principle of the common law which would give to this proceeding any such effect; but, on the contrary, it is in direct conflict with the provisions of the statute covering this proceeding, as section 2755 of the Code expressly provides that an heir at law has full right to test the validity of any claim against the testator's estate, notwithstanding that it may have been allowed or established by the administratrix of the estate. With this false conception of the effect of the litigation prevailing in the minds of the attorneys in their endeavor to advise and protect the interests of these contestants, what is it apparent that these contestants have done in the case?

As it has been heretofore stated, the evidence is very rambling and conflicting. There is no positive or distinct statement that shows that all of these contestants clearly and explicitly intended to concede the claim in question, or that any authorization which they may have given Mr. Hart was to accomplish that result. And when we consider that even an attorney of record, employed to defend the case and to take full charge thereof, has no power to compromise his client's right unless his authority is clear and explicit, it naturally follows that the authority which was conferred upon Mr. Hart, who was not the attorney of record, must be subjected to the same test. The subject of an attorney's power to bind his client has been repeatedly under consideration. The general rule is well stated in 3 American and English Encyclopædia of Law (2d Ed.) p. 358, as follows:

"The general rule is now well settled that an attorney has no power by mere virtue of his retainer and without express authority to bind his client by a compromise of a pending suit or other matter entrusted to his care."

As indicating the different phases of this matter, see the cases of Lewis v. Duane, 141 N. Y. 302, 36 N. E. 322; Beers v. Hendrickson, 45 N. Y. 665; Arthur v. Homestead Fire Ins. Co., 78 N. Y. 462, 34 Am. Rep. 550.

Viewing the conduct of the heirs at law, therefore, it is hardly conceivable that, if anybody had asked them or any one of them if they intended to give Mr. Hart the authority to concede that there were legal claims against their property aggregating considerably more than $3,000, which claims, if they did not give him such authority, the party would have difficulty in proving, they would have replied that such was their intention. These people have come to this country in consequence of the oppression and ill treatment which they met with in the country of their birth. They are of a class who are worthy and industrious citizens and who are adding materially to the prosperity of the community; and, in considering their conduct in some of the complicated transactions of this case, it would be but fair to consider for a moment the mistakes that would be committed by a resident of this country before a tribunal in Russia.

As the petitioner has, therefore, failed to establish the validity of the debts in question, I will dismiss the proceeding.

Proceeding dismissed.