(87 Misc. Rep. 141)

PAUL ARMSTRONG CO. v. MAJESTIC MOTION PICTURE CO.

(City Court of New York.   October, 1914.)

1. ATTORNEY AND CLIENT (§ 81\*)—AUTHORITY OF ATTORNEY—RATIFICATION OF ACTS—SUFFICIENCY OF EVIDENCE.

Evidence in an action to recover advance royalties on previously executed written contracts binding defendant to produce motion pictures based on copyrighted dramas belonging to plaintiff, which agreement was made by defendant's attorney in consideration of the discontinuance of a temporary injunction obtained by plaintiff against defendant, *held* insufficient to show that defendant's attorney was authorized to make such agreement or that defendant had ratified the agreement.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 141, 142, 144–146; Dec. Dig. § 81.\*]

2. PRINCIPAL AND AGENT (§ 99*)—ACTS OF AGENT—WHEN BINDING ON PRIN-
CIPAL—APPEARANCE OF AUTHORITY.

   A principal is responsible only for such unauthorized acts of his agents
as are done under an appearance of authority caused by himself, and not
for acts done under an appearance of authority caused only by the agent.

   [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 254–
261; Dec. Dig. § 99.*]

3. ATTORNEY AND CLIENT (§ 81*)—CONTRACTS ON BEHALF OF CLIENT—BUR-
DEN OF PROOF.

   In an action to recover advance royalties under an agreement made by
defendant's attorney in consideration of the discontinuance of an injunc-
tion, the burden was on plaintiff to prove that the attorney was defend-
ant's agent, with authority to agree to such discontinuance and to the
making of the advance payment.

   [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 141,
142, 144–146; Dec. Dig. § 81.*]

Action by the Paul Armstrong Company against the Majestic Motion
Picture Company. On motion for new trial. Denied.

Phelan Beale, of New York City, for plaintiff.

Seligsberg & Lewis, of New York City (Clarence M. Lewis, of New
York City, of counsel), for defendant.

FINELITE, J. This action came on for trial on October 14, 1914,
before this court and jury, to recover the sum of $1,000 as advance
royalties. At the end of the plaintiff's case a motion was made by the
defendant to dismiss the complaint on the ground that the plaintiff
had failed to prove facts sufficient to constitute the cause of action
mentioned in the complaint, and on the specific grounds that the plain-
tiff has affirmatively proved an agreement which was intended to be
made with the defendant through a person not having authority to
bind the defendant, and that the party acting for the defendant had
no authority on behalf of the defendant to make the agreement to pay
$1,000 to the plaintiff, and that it was without the scope of his agency
or employment. The court thereupon dismissed the complaint, upon
the ground that it affirmatively appeared from the testimony of plain-
tiff's attorney, who was the vice president of the plaintiff, that he
failed to prove that the attorney for the defendant had authority to
pay $1,000 for the discontinuance of the temporary injunction which
had been obtained by the plaintiff against the defendant. Plaintiff
thereupon moved for a new trial on all the grounds stated in section
999 of the Code of Civil Procedure, which motion the court enter-
tained.

[1] It will be necessary to refer to the facts testified to herein to
spell out, if possible, a cause of action in behalf of the plaintiff. It
appears that the plaintiff and the defendant were domestic corporations,
each having a place for the transaction of business in the borough of
Manhattan, city of New York, and that on the 14th day of November,
1913, the plaintiff and defendant each with the other entered into
two certain agreements in writing, wherein and whereby the defendant
promised and agreed, among other things, to produce on the terms
and conditions and for the compensation therein set forth certain mo-

tion pictures based upon and depicting two certain copyrighted dramas, entitled respectively "The Escape" and "The Romance of the Underworld." Said dramas were the property of the plaintiff. Defendant was to produce the same on or prior to the 1st day of February, 1914, and on the failure of the defendant to produce said dramas on or before said time the plaintiff was at liberty to terminate the agreement upon notice to the defendant. The defendant failed to produce said dramas in the form of motion pictures on or before the 1st day of February, 1914. A notice was duly served in writing upon the defendant that the defendant's right, title, and interest accruing to it under either of the said agreements was terminated and at an end, and that the plaintiff was duly reinvested in said dramas.

Thereafter, on the 10th day of March, 1914, the plaintiff instituted an action against the defendant in the Supreme Court, in the county of New York, asking as relief that judgment be awarded in favor of the plaintiff against the defendant, and decreeing that the defendant have no right, title, or interest of any kind in and to a certain one of the said dramas, to wit, the drama entitled "A Romance of the Underworld," or any rights under the said agreement thereto relating, and praying that a permanent injunction issue restraining a violation by defendant of plaintiff's rights, the plaintiff praying as a further relief that the said court should grant an injunction pendente lite restraining the defendant from producing said drama "The Romance of the Underworld" in motion pictures or otherwise, or from selling or disposing of the same, or otherwise interfering with the rights of the plaintiff in and to said drama. The motion papers for said injunction pendente lite were served on the defendant, together with the summons and complaint in said action, on the 10th day of March, 1914. The motion was made returnable on the 20th day of March, 1914.

On the 18th day of March, 1914, two days previous to the hearing of said motion, plaintiff and defendant's attorney entered into a certain oral agreement relating to the withdrawal by the plaintiff of the said application for an injunction pendente lite and discontinuance of the suit. Defendant's attorney promised and agreed with the plaintiff that the defendant would then and there pay to the plaintiff the sum of $1,000 at once or before the end of the day in exchange for said promise and agreement of the defendant's attorney and concurrently therewith, and in consideration therefor the plaintiff made its promise to and agreed with the defendant's attorney that the plaintiff would discontinue its application for said injunction pendente lite and that the action would be discontinued against the defendant, without costs, and that the sum of $1,000, as aforesaid, was to be considered as an additional advance royalty on the "Romance of the Underworld" production received by plaintiff for the advance royalties as agreed between them in the former agreement of November 14, 1913, and that the plaintiff would extend the time for the completion of said motion picture "Escape" to the 15th day of April, 1914, and the time for the completion of the motion picture of the "Romance of the Underworld" to the 20th day of May, 1914; that, relying upon the assurance of the defendant's attorney that the $1,000 would be paid on said day, the

motion for an injunction pendente lite was duly marked discontinued by the defendant on behalf of the plaintiff.

Defendant, on the other hand, admits the making of the agreement, but denies that its attorney was its duly authorized agent, or that said attorney had authority to make an agreement on behalf of the defendant wherein and whereby the defendant would be liable for the payment of $1,000. The attorney for the plaintiff was the only person who testified in the case, he being the vice president of the plaintiff corporation, and he said that prior to November 14, 1913, he had a conversation with H. E. Aitken, president of the defendant, at the defendant's office, as follows:

"Mr. Aitken said he would like to produce the 'Romance of the Underworld' and the 'Escape' in motion pictures, and he would like for us not to produce them. I said: 'Mr. Aitken, we are not anxious to deal with your company, because we have been making some inquiries concerning the same, and I do not care to enter into any dealings with you; but I have since learned that Mr. Seligsberg is your attorney.' He said, 'Yes, Walter is our attorney, and a fine boy,' and I said, 'Yes; I was three years with him in a law office and was fond of him, and at one time we were thinking of practicing law together. That puts it in a very different light,' I said. 'If we reach an agreement, I will be glad to contract with your company with reference to these two plays, and the only reason I will do that is on account of Mr. Seligsberg being associated with you, and I want to have all my dealings with him. In regard to the expense of producing these pictures, should there be any misunderstanding, I want to have all my dealings with Mr. Seligsberg, and I do not want to have any dealings with you or any one of your company.' He said: 'That is perfectly satisfactory, and you go down to Mr. Seligsberg and dicker with him about this agreement. He has the essential points. He has full authority to represent this company, and you may have all of your dealings with him.'"

Thereafter the said witness met Seligsberg at Seligsberg's office, and the terms of the agreement were reduced to writing, signed by the witness, as vice president of the plaintiff, and by Mr. Aitken, as president of the defendant, and delivered on November 14, 1913. Mr. Beale and Mr. Seligsberg thereafter corresponded with each other, which letters were marked in evidence, the purpose of which was to amicably adjust the difficulties then existing, all of which was unsuccessful. Thereafter the action was commenced and a temporary injunction obtained, and a conversation was had between Mr. Seligsberg and Mr. Beale for the settlement of the action, and on March 16, 1914, Mr. Seligsberg and Mr. Beale discussed the terms of settlement. On March 18, 1914, Mr. Beale prepared a written agreement, executed it as vice president of the plaintiff, and caused it to be delivered to Mr. Seligsberg's office. The agreement was returned, with a letter stating that Seligsberg said he would change the conditions of the agreement, or would put it in a little different form. Thereafter Beale suggested certain changes in Seligsberg's agreement, and prepared a new agreement, and again executed it as vice president of the plaintiff and sent it to Seligsberg to be executed by the defendant. Subsequently Mr. Seligsberg stated to Mr. Beale that the defendant had forbidden him to deliver the agreement and the check, and he thereupon returned the agreement to Mr. Beale, with the signatures of the plaintiff and the defendant's officers cut off.

These facts, as above stated, are in substance the testimony as testified to by Mr. Beale, the vice president of the plaintiff. The question now arises: Has the plaintiff proved sufficient facts for the making of an agreement with Mr. Seligsberg, a person authorized on behalf of the defendant corporation to make such agreement, wherein and whereby the defendant would be liable for the acts of Mr. Seligsberg as its agent; or has the act of said agent been ratified by the defendant as principal for the execution of the agreement and the payment of the $1,000 as additional advance royalties upon the moving pictures as aforesaid? Plaintiff contends that the agreement upon which this action was predicated was made with Seligsberg as attorney and agent of the defendant. From the reading of the testimony given by one of the officers of the plaintiff as aforesaid, no sufficient facts to constitute a cause of action against the defendant appear. The plaintiff has failed by his testimony that the attorney's (Seligsberg's) promise to submit the agreement and to pay the $1,000 was ever ratified by the defendant.

[2]. While a principal is bound by his agent's acts, when he justifies a party dealing with his agent and believing that he has given to the agent authority to do those acts, he is responsible only for that appearance of authority thus caused by himself, and not for that appearance of conformity to the authority which is caused only by the agent. Bush v. O'Brien, 164 N. Y. 205, 58 N. E. 106; Lewis v. Duane, 141 N. Y. 302, 36 N. E. 322. Again referring to the testimony of one of the officers of the plaintiff, I fail to find that there is a scintilla of proof that the defendant's president, Aitken, or any other officer of said cor-poration, authorized or directed the attorney, Seligsberg, as its agent, to contract for and agree to pay the sum of $1,000 for advance royalties. Nor has it been proven that there was an implied power vested in the attorney to bind his client by contract. Bush v. O'Brien, supra; Lewis v. Duane, supra; Mandeville v. Reynolds, 68 N. Y. 528–540; Joseph v. Platt, 130 App. Div. 478, 114 N. Y. Supp. 1065; Smith v. Bradhurst, 18 Misc. Rep. 546, 41 N. Y. Supp. 546, affirmed 31 App. Div. 96, 52 N. Y. Supp. 527; Matter of City of New York, 112 App. Div. 160, 98 N. Y. Supp. 331; United States v. Beebe, 180 U. S. 343–352, 21 Sup. Ct. 371, 45 L. Ed. 563; Bogart v. De Bussy, 6 Johns. 94; McKechnie v. McKechnie, 3 App. Div. 91, 39 N. Y. Supp. 402. In Bush v. O'Brien, supra, 164 N. Y. at page 210, 58 N. E. at page 107, Judge Haight stated the law as follows:

"In Barrett v. Third Avenue R. R., 45 N. Y. 628, 635, Allen, J., says: 'The authority of the attorney does not extend to a compromise or release. He may discontinue an action, because that relates to the conduct of the suit, and is within his retainer, and not to the cause of action. An attorney cannot settle a suit, and conclude the client in relation to the subject in litigation, without his consent'—citing Shaw v. Kidder, 2 How. Prac. 244; Lewis v. Gamage, 1 Pick. 347. In the case of Beers v. Hendrickson, 45 N. Y. 665, 669, Grover, J., says: 'An attorney is not authorized by his retainer to satisfy a judgment without payment, and, if he does so, the court will set such satisfaction aside.' In Mandeville v. Reynolds. 68 N. Y. 528, 540, Folger, J., in delivering the opinion of the court, after referring to the ruling of the court below to the effect that the attorneys in the action had no power to compromise the judgment and release the defendant, unless authority was expressly given

to them by the plaintiff, says: 'In holding thus, I think that the court was right. An attorney is not authorized by his retainer to satisfy a judgment without payment, and, if he does so, the satisfaction will be set aside. The authority of an attorney does not extend to a compromise or a release. He cannot settle a suit, and conclude his client in relation to the subject in litigation, without consent of the latter.' In Arthur v. Homestead Fire Insurance Co., 78 N. Y. 462 [34 Am. Rep. 550], it was held not to be within the scope of the authority of an attorney in an action to change the rights of his client, except so far as it may be done in the action. He cannot justify the commencement of another action or create a cause of action against his client which before did not exist. In Lewis v. Duane, 141 N. Y. 302 [36 N. E. 322], it was held that an attorney employed to foreclose a mortgage has no implied authority in the matter to compromise the rights of his client and make nugatory the duty he was employed to perform."

In Lewis v. Duane, supra, Judge Finch, by a unanimous opinion of the court, says:

"An attorney, as such, may not compromise the rights of his client outside of his conduct of the action, or accept less than the full satisfaction sought, or release his client's right, or subject him to a new cause of action. Arthur v. Homestead Fire Ins. Co., 78 N. Y. 469 [34 Am. Rep. 550]; Barrett v. Third Avenue R. R., 45 N. Y. 635; Beers v. Hendrickson, 45 N. Y. 665."

In Matter of City of New York, 112 App. Div. 160, 98 N. Y. Supp. 331, McLaughlin, J., in a unanimous opinion by the court, says:

"An attorney ordinarily has no implied power to bind his client by contract (Bogart v. De Bussy, 6 Johns. 94), and a general retainer does not authorize him either to sell or purchase property (Averill v. Williams, 4 Denio, 295 [47 Am. Dec. 252]), or release, compromise, or settle a cause of action (Barrett v. Third Avenue R. R., supra), or to satisfy a judgment without full payment (Mandeville v. Reynolds, supra), or to make an offer of judgment." Bush v. O'Brien, supra; Riggs v. Waydell, 78 N. Y. 586; Stone v. Bank of Commerce, 174 U. S. 412, 19 Sup. Ct. 747, 43 L. Ed. 1028.

[3] The burden of proof was upon the plaintiff to prove that on March 18, 1914, Seligsberg was still the agent for the defendant, and that he had authority to enter into the agreement for the discontinuance of the motion, as well as the action, and the payment of the $1,000. No evidence was produced by the plaintiff to this effect (Fullerton v. McLaughlin, 70 Hun, 568, 571, 24 N. Y. Supp. 280), and for such failure of proof the dismissal of the complaint was proper. The plaintiff cites numerous authorities in support of his contention in reference to ratification. From the examination of those authorities the court finds that there had been an agency, and from the evidence adduced in those cases it was implied that the agency for the principal existed; but in the case at bar no such proof of agency was presented to enable the court to submit the question involved herein to the jury.

The motion for a new trial must, therefore, be denied, to which plaintiff's counsel may have an exception, with a stay of 5 days and 30 days to make a case, if the plaintiff be so advised.

Motion denied.