(90 Misc. Rep. 691)

### PAUL ARMSTRONG CO. v. MAJESTIC MOTION PICTURE CO.

(Supreme Court, Appellate Term, First Department. June 23, 1915.)

PRINCIPAL AND AGENT ☞124—AUTHORITY OF AGENT—QUESTION FOR JURY.
    Whether defendant's agent had authority to promise plaintiff a payment in adjustment of a controversy *held*, under the evidence, a question for the jury.

    [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 724; Dec. Dig. ☞124.]

Appeal from City Court of New York, Trial Term.

Action by the Paul Armstrong Company against the Majestic Motion Picture Company. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial granted.

See, also, 87 Misc. Rep. 141, 149 N. Y. Supp. 1039.

Argued June term, 1915, before GUY, BIJUR, and PAGE, JJ.

Phelan Beale, of New York City, for appellant.

Seligsberg & Lewis, of New York City (Clarence M. Lewis, and Walter N. Seligsberg, both of New York City, of counsel), for respondent.

BIJUR, J. This action was brought to recover $1,000, which one Seligsberg, pretending to act on behalf of defendant, promised to pay plaintiff in adjustment of a controversy. The only question involved is whether Seligsberg had sufficient authority to bind the defendant by his promise.

In November, 1913, plaintiff, owning certain rights in plays, was approached by defendant, which desired to produce two of the plays

in motion pictures. A conversation ensued between plaintiff's vice president, Phelan Beale, and Mr. Aitken, defendant's president. Beale, testifying to this conversation, repeats it as follows:

" * * * I said, 'Mr. Aitken, we are not anxious to deal with your company, because we have been making some inquiries concerning the same, and I do not care to enter into any dealing with you, but I have since learned that Mr. Seligsberg is your attorney;' he said, 'Yes; Walter is our attorney, and a fine boy;' and I said, 'Yes; I was three years with him in a law office, and was fond of him, and at one time we were thinking of practicing law together; that puts it in a very different light;' I said, 'If we reach an agreement, I will be glad to contract with your company with reference to these two plays, and the only reason I will do that is on account of Mr. Seligsberg being associated with you, and I want to have all my dealings with him; in regard to the expense of producing these pictures, should there be any misunderstanding, I want to have all my dealings with Mr. Seligsberg, and I do not want to have any dealings with you or any one of your company.' He said, 'That is perfectly satisfactory, and you go down to Mr. Seligsberg and dicker with him about this agreement; he has the essential points; he has full authority to represent this company, and you may have all of your dealings with him.' "

Negotiations at once took place between Beale and Seligsberg, resulting in a written contract between the parties which provided for the production by the defendant of both of the plays, one of them not later than February 1, 1914. Defendant did not so produce that play, and thereupon plaintiff undertook to terminate the agreement between the parties, and brought an action and applied for a temporary injunction (in March, 1914) to restrain the production of these plays by defendant. Pending the argument of the motion for an injunction, Beale and Seligsberg had a number of conferences, as a result of which Seligsberg undertook, on behalf of defendant, to pay plaintiff an additional $1,000 as advance royalties, and Beale agreed to extend defendant's time for the production of the plays for some two months, also to extend certain other stipulations contained in the original agreement; and also agreed to withdraw the application for a temporary injunction and discontinue the action. The compromise agreement was reduced to writing, executed by plaintiff, and delivered to Seligsberg, and the application for an injunction marked off the calendar. Beale, testifying to an intervening conversation with Seligsberg, says:

"He [Seligsberg] said that the contracts had been signed * * * and I have the check."

Defendant's counsel admitted that the agreement had been signed and the signatures thereafter cut off, and Beale further testifies that Seligsberg told him, "My client has forbidden me to deliver this check." Beale was the only witness on the trial, and all of this testimony was admitted without objection. When plaintiff rested, defendant moved to dismiss the complaint, specifically on the ground that Seligsberg did not have authority to make the agreement of compromise, and the court dismissed the complaint—

"on the ground that it affirmatively appears from the testimony of the plaintiff that he failed to prove that the attorney of the defendant had authority to pay $1,000 for the discontinuance of the temporary injunction."

Plaintiff asked to go to the jury on this issue, which request was denied, and due exception taken.

In these rulings I think the learned judge below erred. At the outset it must be observed that plaintiff makes no claim that the agreement sought to be enforced in this action was within the scope of Seligsberg's employment or authority merely as attorney at law for the defendant. I am inclined to believe that the conversation with Aitken, above set forth, was a sufficient indication by the president of the company of the authority of Seligsberg to deal with plaintiff and bind defendant in all matters connected with the subject-matter of the contract about to be made, both before and after its execution. But at all events the inference in that direction to be drawn from the conversation was a matter for the determination of the jury. Moreover, the subsequent conduct of the defendant in the carrying out of the original agreement affords strong confirmation of the view that Seligsberg had defendant's full authority to represent it in the premises. The signed agreements were exchanged between plaintiff and Seligsberg personally. Two weeks after the execution of the agreement Seligsberg called for the manuscripts required to be delivered, and plaintiff delivered them to Seligsberg personally and obtained Seligsberg's personal receipt therefor. On November 22d the first check (of $1,000) due from defendant to plaintiff pursuant to the terms of the contract was delivered to plaintiff by Seligsberg in a letter signed by Seligsberg personally, and the check was made by a third corporation to the order of Seligsberg, who indorsed it to plaintiff; Seligsberg explaining to plaintiff that the third corporation owed money to defendant and was adjusting the indebtedness in this form. Other similar transactions took place between plaintiff and Seligsberg personally.

Finally, when plaintiff sent to defendant, on February 5th, the notice terminating defendant's rights under the agreement, the two long letters containing and explaining the notice were answered by Seligsberg personally, who said:

"The Majestic Motion Picture Company has referred to me your two letters of February 5th," etc. "I am sorry you did not take the matter up with me first," etc.

It seems to me that under all these circumstances the question should have been submitted to the jury whether Seligsberg did not have authority to make the adjustment of the controversy arising under the contract which forms the subject-matter of this action. Moreover, the fact that, after the oral agreement was reached between Beale and Seligsberg, defendant actually signed the agreement which embodied the oral stipulations and delivered the check for $1,000 therein called for to Seligsberg, is evidence exceedingly strong, if not conclusive, of defendant's ratification of Seligsberg's agreement on its behalf. The mere fact that neither the agreement nor the check was delivered may bear upon the ineffectiveness of the agreement, which, no doubt, depended in part upon its delivery; but it does not detract from the

weight of the acts of defendant as constituting a ratification of Seligsberg's agreements on its behalf.

Judgment reversed, and new trial granted, with costs to appellant to abide the event. All concur.