PAUL ARMSTRONG CO. v. MAJESTIC MOTION PICTURE CO.

(City Court of New York, Trial Term. December, 1915.)

COMPROMISE AND SETTLEMENT ⟨Key⟩5—WRITING—ATTORNEYS—RULE OF PRACTICE.

Plaintiff company, through its vice president and attorney herein, entered into an arrangement with defendant through its agent in fact and attorney herein, by which defendant acquired the film rights for two plays, and thereafter plaintiff notified defendant of its cancellation under the arrangement, and brought an action in the Supreme Court for an injunction, and plaintiff and defendant, through their attorneys, reached an agreement by which defendant was to pay plaintiff $1,000 for an extension of time, and the written agreement was signed by defendant's officers and in behalf of plaintiff, but, before defendant's attorney delivered the check, defendant refused to carry out the agreement, and the parties, through their attorneys, agreed that the injunction should be discontinued, which was subsequently done and defendant still refused to deliver the check. General Rules of Practice rule 11, provides that no private agreement or consent between the parties or their attorneys in respect to proceedings in the cause shall be binding, unless reduced to the form of an order by consent, or unless evidenced by writing subscribed by the party charged or his counsel. *Held*, in an action to recover the $1,000, that the rule was no bar to the enforcement of an oral contract between the principals or their authorized agents in fact, even though such adjustment might affect a pending court proceeding involving part of the matters in controversy, so that the verdict against defendant would not be set aside because the promise to pay that amount was not in writing.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 10–16; Dec. Dig. ⟨Key⟩5.]

Action by the Paul Armstrong Company against the Majestic Motion Picture Company on an oral agreement between the parties respecting scenario rights in certain plays owned or controlled by the plaintiff. Verdict for plaintiff for $1,095. Motion to set aside the verdict and for a new trial denied.

Phelan Beale, of New York City, for plaintiff.

Seligsberg & Lewis, of New York City (Clarence M. Lewis and Walter N. Seligsberg, both of New York City, of counsel), for defendant.

RANSOM, J. By the jury's unhesitant award, under the law of the case as laid down by the learned Appellate Term (90 Misc. Rep. 691, 154 N. Y. Supp. 127, reversing 87 Misc. Rep. 141, 149 N. Y. Supp. 1039), the plaintiff has received a verdict for the sum of $1,000 and interest, payable by the terms of an oral agreement entered into on March 17, 1914, between the plaintiff, Paul Armstrong Company, through Phelan Beale, its vice president, principal stockholder and active executive, and the defendant, Majestic Motion Picture Company,

acting through Walter N. Seligsberg, its agent in fact, conducting all of the business transactions between the parties, including those to which the agreement of March 17th related.

The defendant contends that I must set the verdict aside, for the reason that Beale and Seligsberg are members of the bar, that prior to March 17, 1914, a part of the business matters dealt with by the agreement of that date had become the basis of a Supreme Court action then pending, that Beale was already the attorney of record for the present plaintiff in that action, and Seligsberg was a member of a law firm which had regularly represented the defendant and became attorneys of record for the present defendant in the Supreme Court action a few days subsequent to March 17th, that by reason of the business adjustments effected by the oral agreement of March 17th certain steps were required to be taken in and regarding the Supreme Court action, and that accordingly the promise to pay the $1,000 is unenforceable by virtue of rule 11 of the General Rules of Practice, which provides that:

"No private agreement or consent between the parties or their attorneys, in respect to the proceedings in a cause, shall be binding, unless the same shall have been reduced to the form of an order by consent, and entered, or unless the evidence thereof shall be in writing, subscribed by the party against whom the same shall be alleged, or by his attorney or counsel."

This motion I am constrained to deny, because neither the purpose nor the letter of the salutary rule just quoted can be regarded as relieving the defendant from paying the sum agreed. Beale and Seligsberg were members of the bar, but their business connection with the affairs of their respective companies seems to have been close and continuous. The plaintiff corporation controlled the scenario rights of two of Paul Armstrong's dramas, "The Romance of the Underworld" and "The Escape." The defendant wished to produce these as moving picture plays. Armstrong and Beale were unwilling to deal with the defendant's president; for personal reasons, Beale was willing to deal with Seligsberg. Contracts were accordingly consummated, on November 14, 1913, under which the defendant acquired the film rights for the two plays, on agreement to produce them before February 1, 1914, with a reservation of right to the plaintiff to cancel the arrangement by giving notice, should the defendant fail to put the films on exhibition by the date specified. The manuscripts were delivered; "The Escape" was partially "filmed" at the defendant's California studio; the plaintiff held in abeyance, as agreed, the use of Paul Armstrong's name in connection with other scenarios; but the defendant failed to produce either play by February 1st, although the illness of Miss Blanche Sweet of the producing company had perhaps reasonably excused the noncompletion of "The Escape." In all the transactions between the two companies, Seligsberg had acted for the defendant, and the issue of his authority, as agent in fact, to bind the defendant with respect to what took place on March 17, 1914, was correctly determined by the jury.

On or about February 5th, the plaintiff served notices of cancellation of the contracts as to both plays. Further negotiations with Seligs-

berg failed to bring matters to any satisfactory basis, and on March 10, 1914, the plaintiff, as a means of bringing matters to a head, instituted the Supreme Court action, in which both temporary and permanent injunction was asked, to prevent the defendant from going ahead in any respect with the "Romance of the Underworld," to which alone the action related. The motion for an injunction pendente lite was placed upon the Special Term calendar for March 20th, and the defendant was required to serve its replying affidavts, if any, by March 15th. Conferences between Beale and Seligsberg followed, at which the latter made efforts to reach a satisfactory business adjustment of all matters in controversy, on a basis of compensating the plaintiff for its loss through the default to date and securing further time for the defendant on both films. At length an agreement was reached, on March 17th, by which the defendant agreed to pay immediately the $1,000 now in suit, and received a substantial extension of time on both films and on Armstrong's abstention from vending his name in connection with other scenarios. It was thereafter proposed to reduce this adjustment to writing, and the $1,000 check was meanwhile given to Seligsberg, and the written memorandum was signed by the defendant's officers, as well as in behalf of the plaintiff; but before Seligsberg delivered it and the check, on March 20th, the defendant changed its mind and forbid Seligsberg to deliver either the check or the signed memorandum, or to carry out his agreement of March 17th.

In connection with or in consequence of this settlement of all the controversies between their respective principals, Beale and Seligsberg had agreed that the injunction proceeding as to the "Romance of the Underworld" should be permitted to lapse, that the plaintiff would send no one to court on March 20th and the defendant might have the motion marked off the calendar, and that the Supreme Court action, which had served its purpose in bringing matters to a head, should be discontinued. All this was subsequently carried out. The action was discontinued, under a stipulation duly signed by counsel for both parties; the injunction motion was marked off the calendar on the morning of the 20th, by a representative of Seligsberg's law firm; but at 1 o'cock on that day Seligsberg informed Beale that the former's principals had instructed him not to deliver the check called for by the agreement of March 17th.

The action at bar does not seek to compel performance of an oral consent or stipulation as to proceedings in any court; it does not hinge upon any question involving such an oral consent or stipulation. Rule 11 contains nothing to balk the enforcement of the agreement in suit. The issue here is to an oral agreement to pay $1,000, and rule 11 is not a supplement to the statute of frauds. It is rather an enactment of a salutary conception that, where disputes arise as to what consents or stipulations have been made for the doing of this or that in a pending action, the court should not compel anything to be done by way of proceedings therein, which had not been reduced to writing and signed by the party against whom it is sought to be enforced or by his attorney. If Seligsberg had asserted and Beale had denied that, as attorneys, they had orally stipulated to discontinue the action on

payment of $1,000, which Seligsberg's clients were willing to pay, rule 11 would properly relieve the court of the necessity of deciding the issue of veracity between men who had acted as officers of the court, and discontinuance of the action would not be compelled, by suit or otherwise

The rule interposes no bar, however, to the enforceability of an oral agreement between principals or their authorized agents in fact, for the adjustment of business controversies, even though that adjustment may have an effect upon the outcome or pendency of a court proceeding involving part of the matters in controversy. Particularly has the rule no bearing where all the court proceedings possibly contemplated by the agreement have been duly taken, in entire good faith, by the party who seeks to hold the other to performance of the terms of the adjustment, after that other has had the full benefit of the steps taken, in the action and otherwise, pursuant to the agreement. The action was discontinued under a written stipulation mutually signed; a stipulation for the entry of an order of discontinuance without notice was duly signed by the plaintiff's attorney and sent to Seligsberg on March 17th; the dismissal of the injunction motion was permitted in reliance on Seligsberg's reiterated assurances; no phase of the business adjustment of March 17th called for or affected any other "proceedings in a cause"; Seligsberg and his principals may not now shield themselves behind rule 11 and complain that this rule required the whole agreement of March 17th, including the promise to pay the $1,000, to be in writing.

A procedural rule such as this should be construed and applied as sword of justice, rather than shield of injustice. Examination of decisions in which rule 11 has been construed discloses nothing at variance with the above-stated view of its scope and applicability. Smith v. Bach, 82 App. Div. 608, 81 N. Y. Supp. 1057; Swecker v. Levine, 135 App. Div. 432, 120 N. Y. Supp. 425; Schweinberg v. Altman, 131 App. Div. 797, 116 N. Y. Supp. 318; Mutual Life Insurance Co. v. O'Donnell, 146 N. Y. 275, 40 N. E. 787, 48 Am. St. Rep. 796; Connell v. Stalker, 21 Misc. Rep. 609, 48 N. Y. Supp. 77; Friedland v. Commonwealth Fire Ins. Co., 136 App. Div. 6, 120 N. Y. Supp. 126; Lauck v. Gorman, 85 Misc. Rep. 491, 148 N. Y. Supp. 933; Bradford v. Downs, 25 App. Div. 581, 49 N. Y. Supp. 521; Empire State Pickling Co. v. Pfister, 80 Misc. Rep. 162, 141 N. Y. Supp. 817; Kennedy v. Jarvis, 126 App. Div. 551, 110 N. Y. Supp. 894; People v. Stephens, 52 N. Y. 306; Gaillard v. Smart, 6 Cow. 385; Turner v. Burrows, 1 Hill, 627; Montgomery v. Ellis, 6 How. Prac. 326.

The motion to set aside the verdict is denied. The defendant may have 10 days' stay of execution and 30 days within which to make a case on appeal. Submit order on one day's notice.